CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
8/1/2017
JULIA C. DUDLEY, CLERK
BY: s/ JODY TURNER
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TREX COMPANY, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:17-cv-00005 |
| ) | |
| CPG INTERNATIONAL LLC d/b/a AZEK ) | By: Elizabeth K. Dillon |
| BUILDING PRODUCTS, ) | United States District Judge |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Trex Company, Inc. (Trex), filed a verified complaint on February 1, 2017, seeking damages and injunctive relief against the defendant, AZEK.[1] Trex asserts that AZEK, who competes with Trex in the wood-alternative decking industry, has engaged in an advertising campaign that includes numerous statements of false advertising in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*

Pending before the court and addressed in this memorandum opinion are two related motions. The first is Trex's motion for a preliminary injunction (Dkt. No. 13), in which Trex asks the court to: enjoin AZEK from publishing the false statements identified in the verified complaint and/or any other false or misleading commercial statements; require AZEK to remove those statements from certain websites, Facebook, and other locations; require AZEK to publish various corrective statements and to send retraction letters to all known recipients of those statements; and to destroy immediately all advertising and promotional materials that contain the statements and/or any other false or misleading commercial statements.

---

[1] Plaintiff originally named "Azek Building Products, Inc.," but on consent motion, the caption of the case was modified to name the proper defendant, CPG International LLC d/b/a AZEK Building Products." Just as the parties did in their briefing, the court refers to the defendant as AZEK.

The second motion is AZEK's motion to dismiss (Dkt. No. 23), which is based on its contention that all of the challenged statements are mere "puffery" and are not actionable under the Lanham Act. Both motions have been fully briefed, and the court received evidence and heard argument over the course of a two-day hearing. The court will address the motion to dismiss first because a dismissal of all claims would effectively moot the motion for preliminary injunction. For the reasons set forth below, the motion to dismiss will be granted in part and denied in part, and the motion for preliminary injunction will be denied.

## I. BACKGROUND

The materials that the court can consider when ruling on the motions differs for the two motions. When ruling on the motion to dismiss, the court is limited to a consideration of the allegations of the complaint and any documents attached thereto or incorporated by reference. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). The court treats the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 189 (4th Cir. 2010); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

For purposes of the motion for preliminary injunction, the court can consider a broader range of documents and information, including the testimony offered at the preliminary injunction hearing and the declarations and affidavits submitted by the parties. The Fourth Circuit, following the lead of seven other circuits, has stated that a district court ruling on a preliminary injunction "may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex. rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and*

*remanded on other grounds*, 137 S. Ct. 1239 (2017).  Additionally, "[i]n granting or refusing an interlocutory injunction," the court is required to find the facts specially and state its conclusions of law separately.  Fed. R. Civ. P. 52(a)(2).

Much of the testimony offered over the course of the hearing focused on elements of the plaintiff's Lanham Act claim.  The court does not reach these issues at this time based on its rulings herein.  These include issues of whether the allegedly false statements had the tendency to deceive, were material, and whether they were likely to cause injury to Trex.  Accordingly, it is not necessary to discuss that testimony in any detail.  Instead, the court will make findings of fact only insofar as they are necessary to the court's legal analysis.

**A. The Wood-Alternative Decking Industry**

Because it is important for purposes of both motions to understand the business context in which this case arises, the court begins with a brief overview of the industry in which AZEK and Trex compete: the wood-alternative decking industry.  The industry focuses on providing an alternative to natural wood decking for consumers and those who build or install decks.  Trex "pioneered the very first wood-alternative decking products," beginning in 1992.  (Pl.'s Mem. Supp. Mot. Prelim. Inj. 3, Dkt. No. 14.)  Although a number of other companies have begun offering competing products, including AZEK, Trex still has the largest market share and the largest amount of gross sales of any company in the wood-alternative decking industry.  According to a report on the industry prepared by an independent market research firm, Trex is the best-selling decking and railing brand, outselling second-place AZEK/TimberTech by a substantial margin.  (*Id.* at 4.)  Indeed, AZEK has conceded, for purposes of the pending motions, that Trex has a greater market share and higher gross sales than AZEK.  There are a number of other companies that compete in the same marketplace, although Trex and AZEK are

the two largest. According to one of Trex's witnesses, four or five manufacturers comprise at least 85% of the market, but there are also a number of smaller competitors.

AZEK sells its product under both the AZEK and TimberTech brands.[2] The AZEK brand consists entirely of PVC decking products, which generally are more expensive than wood composite decking. Timber Tech is the division of AZEK that sells the capped composite decking, which competes directly with Trex's capped composite decking. According to at least one witness, PVC and capped composites make up the entirety of the wood-alternative decking industry, also known as the "premium decking" industry.

The parties spent considerable time at the hearing eliciting testimony concerning the companies' respective distribution chains. This was done primarily to augment each side's arguments concerning who makes the purchasing decisions about which brand of alternative wood decking to use—consumers or contractors—and to highlight the target audience for the various advertisements. Both companies sell their products in similar ways. Notably, neither sells directly to consumers or homeowners, and it is not possible to order products from their websites. Instead, they typically sell to distributors or wholesalers, who then sell to lumber yards. The lumber yards, in turn, sell primarily to contractors and home builders. Both companies also attempt to sell directly to big-box stores like Lowe's and Home Depot, although currently Trex is the only brand of wood-alternative decking products stocked on the shelves at both Home Depot and Lowe's. The big box stores then sell to contractors and do-it-yourselfers.

Relevant to certain of the elements of a Lanham Act false advertising claim, it is Trex's factual position that advertising targeted to consumers is very important and greatly affects sales. It has submitted an affidavit from one of its salespeople explaining how important consumer

---

[2] According to Mr. Hyatt, one of AZEK's witnesses, TimberTech and AZEK began as separate companies. They merged in either 2012 or 2013 to form AZEK Building Products, which now sells products under both names.

4

choice is to the decision, and several of its witnesses testified about this. AZEK disputes this and points instead to certain reports, as well as testimony from its own witnesses, suggesting that consumers do not really have that much impact on which brand is used for their deck and that the decision is more often influenced or made by industry professionals. The court need not resolve this factual dispute at this time.

The court also heard a significant amount of testimony comparing the Trex and TimberTech products. They are very similar, but do differ slightly in some respects. For example, TimberTech's composite capped product is capped on four sides, whereas Trex's is only capped on three.[3] TimberTech also offers a longer warranty against staining and fading (30 years versus Trex's 25 years) and a lifetime warranty on manufacturing defects, which Trex does not offer. AZEK also presented a lot of detailed testimony about testing by a third party that it hired, in which its products performed significantly better than Trex products, as to both fading and as to the rate of water absorption.

**B. The Allegedly False Statements**

Having provided that background, the court next turns to the categories of statements identified by Trex as being actionable under the Lanham Act. Trex challenges all of these categories because it believes they falsely state or suggest that AZEK is the market leader in sales. It claims that AZEK began this extensive advertising campaign, which primarily targets consumers, as an attempt to build up AZEK's brand while tearing down Trex's. It argues that the messages are intended to convey "a single unambiguous, and verifiably false message: AZEK, through its AZEK and TimberTech brands, is the market-leader in sales and the top

---

[3] Capping is the process of adding material across the top surface of the composite board, which gives the board its fade-, stain-, and scratch-resistant properties. A capped board also resists water intrusion better than an uncapped board.

5

choice of consumers." (Pl.'s Reply Supp. Mot. Prelim. Inj. 1, Dkt. No. 48.) There are four categories of challenged statements.

First, there are the so-called "#1" statements, which include the statements that AZEK is "the #1 in Premium Decking" and "Number One in Premium Decking." These statements have been published in a number of places, including an advertisement in the LBM Journal and on AZEK's website.[4] (Compl. ¶¶ 27–32 & Exs. A & B, Dkt. No. 1.) The pages on which these statements appear do not reference sales volume or market share. Instead, the paragraphs below the statements reference "the best high-performance building materials available," AZEK's "commitment to technology and materials science innovation," and "our dedication to inspiring design and style." (*Id.* at Ex. B.) In smaller font, there is a paragraph comparing AZEK to wood decking and discussing its "30-year limited fade and stain and lifetime limited warranties."

The second group of statements are the 2-to-1 statements. Specifically, on TimberTech's website, AZEK advertised that TimberTech "is a preferred choice 2-to-1 over the competition." In another place on the site, it states: "Across the country, TimberTech's premium wood replacement materials are a preferred choice 2-to-1 over the competition." (*Id.* ¶¶ 33–35 & Ex. C.) Again, there is no specific reference in those statements appear to sales volume or market share. Instead, there are three paragraphs devoted to touting specific characteristics of TimberTech's product, titled "Low Maintenance," "Extremely Durable," and "Leading Warranty."

Third, AZEK's CEO stated at the January 2017 Internal Builders' Show and later provided as part of a press release that AZEK is "the preferred premium leader in the categories

---

[4] According to the complaint, "[t]he LBM Journal is the leading national trade magazine for the lumber and building materials distribution industry, and subscriptions are free for industry professionals. It is targeted to the very building materials suppliers that both Trex and AZEK rely on to distribute their products to consumers." (Compl. ¶ 28.)

where we offer products." (*Id.* ¶¶ 35–37 & Ex. D.) Again, that press release then references AZEK's warranty. On a separate page of the same press release, AZEK claims is it "the leader in performance, aesthetics, and innovation" and again references "the best warranties in the industry."

Fourth and finally, AZEK has advertised that "TimberTech Is the #1 Provider in Design Preference," which statement followed the question, "Looking to build your dream deck?" That statement appeared on TimberTech's website and as a sponsored ad on Facebook page. (*Id.* ¶¶ 38–39 & Ex. E.)

In terms of timing, the 2-to-1 statements (which are the only statements that the court concludes are *not* puffery), appeared on both the home page (as one of several rotating banner images) and the products page of TimberTech's website from October 5, 2016, until approximately January 23, 2017, and were removed after Trex sent to AZEK a cease and desist letter.[5] In both a corrected declaration and at the hearing, Mr. Czachor, who works in AZEK's marketing department as "Brand Manager," testified that the 2-to-1 statement will not be restored on the website during the pendency of the litigation. (*E.g.,* Czachor Corrected Decl. ¶ 11, Dkt. No. 37-1.)[6]

---

[5] There is a dispute of fact as to AZEK's motivation for removing the language. Trex has argued that it was done in response to the cease and desist letter. AZEK has offered testimony explaining that the language was removed not because of the cease and desist letter, but because it was not performing well as part of a search engine optimization (SEO) strategy to drive customers to the website. The court need not resolve this dispute at this time.

[6] Although some of Mr. Czachor's testimony at the hearing was not credible, and although there is some question as to whether he has the authority to ensure that the statement will not be restored during the pendency of the litigation, the court will take him at his word as to this issue. The court notes, though, that it does not rest its ruling in part or in whole on this assurance.

## II. DISCUSSION

**A. Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint to determine whether the plaintiff has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Basically, the plaintiff must allege facts to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To succeed on a false advertising claim under the Lanham Act, Trex must establish five elements, the first of which is that "the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011).

In its motion to dismiss, AZEK argues that all of the statements challenged by Trex fail to satisfy this first element because they all "involve paradigmatic 'puffery.'" (Def.'s Mem. Supp. Mot. Dismiss 5, Dkt. No. 24.) That is, in order to trigger liability under the Lanham Act, advertising must consist of false or misleading statements of fact. "Puffery," by contrast, is "exaggerated advertising, blustering, and boasting," or "vague" and "general claim[s] of superiority." *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 302 (4th Cir. 2017) (citations omitted). Because puffery is not a factual statement and because "no reasonable person would rely on such superlatives," it is not actionable under the Lanham Act. *Id.* at 302–03.

In appropriate circumstances, courts may determine as a matter of law that a particular statement is puffery when ruling on a motion to dismiss under Rule 12(b)(6). *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[,] and we can think of no sound reason why they should not do so."). A number of district courts within the Fourth Circuit have concluded that certain statements were non-actionable puffery when ruling on a Rule 12(b)(6) motion to dismiss. *E.g.*, *Solum v. CertainTeed Corp.*, 147 F. Supp. 3d 404, 412 (E.D.N.C. 2015) (dismissing claim under North Carolina Unfair and Deceptive Trade Practice Act because statement that was basis of claim was puffery); *Walters v. Pella Corp.*, No. 2:14-cv-544, 2015 WL 2381335, at *5 (D.S.C. May 19, 2015) (dismissing some of the bases for plaintiff's breach of implied warranty claim on the grounds that certain of the statements were puffery); *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 873, 881–82 (S.D.W. Va. 2014) (dismissing Lanham Act claim because statements were puffery).

The court rejects Trex's suggestion that, because the statements are all part of one advertising campaign and they are all part of misleading scheme, the court should consider all the statements together. Instead, the court must review each statement separately to determine whether it is mere puffery or an actionable statement under the Lanham Act. *Verisign,* 848 F.3d at 299 ("[A] Lanham Act claimant may not mix and match statements, with some satisfying one Lanham Act element and some satisfying others"). So, the court does not consider the challenged statements "in concert," but separately. *Id.* (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002)).

The court thus turns to the four categories of statements identified by Trex as being false.[7] The court addresses together the first and fourth categories because both involve types of "number one" statements and similar principles apply to both. Ultimately, the court concludes that all of the statements, with the exception of the "2-to-1" statements, are puffery and are not actionable under the Lanham Act.

1. **The "#1" statements**

AZEK has cited to a number of cases in which #1 claims have been determined to be puffery. In response, Trex argues that these cases are distinguishable on their facts and focuses its analysis on four, in particular: *In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915 (C.D. Cal. 1994), *Bridal Expo, Inc. v. van Florestein*, No. 4:08-cv-03777, 2009 WL 255862 (S.D. Tex. Feb. 3, 2009), *Home Show Tours, Inc. v. Quad City Virtual, Inc.*, 827 F. Supp. 2d 924 (S.D. Iowa 2011), and *Hacket v. Feeney*, No. 2:09-cv-02075, 2011 WL 4007531 (D. Nev. Sept. 8, 2011). Trex also cites to a number of cases in which similar statements were found not to be puffery. (Pl.'s Opp'n to Mot. Dismiss 3 n. 2, Dkt. No. 39.)

AZEK appears to contend that a statement that a business is #1 can never be anything but puffery, but the Fourth Circuit instructs that statements must be read in context. *Verisign*, 848 F.3d at 303. Context means not only that the court must review the statements in and around the challenged statement, *id.,* but also the context of the industry. *See C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997) (noting that liability for

---

[7] Trex has also pleaded, in the alternative, that even if the statements are not false, they are "grossly misleading and deceive customers." (Compl. ¶¶ 32, 35, 37, 39.) But the court does not even reach the question of whether a statement is literally false or instead misleading if the statement is puffery. Puffery cannot, by definition, mislead consumers because it is a type of statement on which no reasonable consumer would rely. *Verisign*, 848 F.3d at 303. Thus, this alternative pleading does not affect the court's ruling that the claims based on non-actionable puffery must be dismissed.

false advertising must be considered "given the merchandising context"). Thus, the court discusses briefly the context in these other cases and compares that to the context here.

The *Century 21* case also involved two competing companies, one older and more established than the other. The district court in *Century 21* ruled that a statement made at the newer company's sales conference saying "[W]e obviously are going to broadcast the fact that we are now number 1 in the United States" was non-actionable puffery. *Id.* at 928. Likewise, the court determined that a statement saying that the chairman had "declared RE/MAX #1 in the United States—and the World" was "classic puffery" because it "makes no reference to the category in which RE/MAX is number one." *Id.*

Trex argues that the *Century 21* case is distinguishable on two grounds. First, Trex contends that, unlike here, the statements in *Century 21* did not specify a particular "category" as to which the #1 statement applied. *Id.* at 928–29. By contrast, the argument continues, AZEK's statements in fact refer to specific "categories": they reference either "premium decking" or "design preference." But premium decking simply designates the industry here, and it is plain that RE/MAX and Century 21 competed in the real estate industry. So that is a distinction without a difference. As to the use of "design preference," that is simply an additional vague term and does not convert the puffery into a factual statement.

Second, Trex correctly notes that, in *Century 21*, there were repeated disclaimers or caveats given in conjunction with the #1 statements, in which RE/MAX stated that it could not be entirely sure of its #1 status because its competitors would not release their numbers. *Id.* No such caveats appear on or around the challenged #1 statements by AZEK. That is certainly a difference, but ultimately what matters is whether the statement at issue is a "vague" and "general claim of superiority," rather than a factual statement. *Verisign*, 848 F.3d at 302. The

court concludes that the statements here cannot reasonably be interpreted as factual statements and are therefore puffery. The other cases discussed by the parties also support the court's conclusion.

In *Bridal Expo, Inc.*, for example, the court held that a statement that a particular show as "Houston's #1 Bridal Show" was too ambiguous to be actionable. 2009 WL 255862, at *7. The statement fell "neatly into the category of 'bald assertion of superiority or a general statement of superiority' that the *Pizza Hut* court described as puffery." *Id.*

Similarly, in *Home Show Tours, Inc.*, the statements at issue were made by a for sale by owner (FSBO) website, who boasted that it was "the #1 FSBO destination in the [Quad-City Area]," that it was "the one and only 100% FSBO website of the Quad Cities," and that it had the "best exposure in the [Quad-City Area]." 827 F. Supp. 2d at 939. The court concluded that all of these statements were puffery, noting that they were nothing more than "vague or highly subjective claims of product superiority" or "bald assertions of superiority." *Id.* It noted specifically that the claims of superiority also did not state that they were based upon studies or other empirical data, and so they were mere puffery. *Id.* at 940.

The claims here are similar. Although Trex insists the #1 reference *must* be a reference to sales, the ads themselves do not state that, nor do the pages on which they appear reference sales. They are instead "bald assertions of superiority." *See id.* at 939.

Similarly, *Hacket* involved an advertisement that a stage show was "Voted #1 Best Show in Vegas." 2011 WL 4007531, at *4. The court concluded that the statement was non-actionable puffery under the Lanham Act. It also noted, though, that if the statement had said *who* had voted it the best show in Vegas, and there was no actual vote, then it might have been actionable, noting the "line between [the statement at issue] and false advertising may be a thin

12

one." *Id.* at *5.  Here, unlike in *Hacket*, none of the #1 statements say it was voted or preferred as #1, but similar to *Hacket*, there is no indication of who thinks AZEK is #1.

Additionally, when discussing whether the statements before it were puffery, the Fourth Circuit in *Verisign* cited repeatedly—and favorably—to the Eighth Circuit's decision in *American Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390 (8th Cir. 2004).  There, the court held that the statement "America's Favorite Pasta" was puffery, in part because no "specific person or [] identifiable group" is indicated as favoring the product.  *Verisign*, 848 F.3d at 303 (quoting *Am. Italian Pasta Co.*, 371 F.3d at 391 & n.5).  Like the statements in both *Hacket* and *American Italian Pasta*, no specific person or identifiable group is indicated as favoring AZEK's product here.

Trex characterizes AZEK's statements as saying that it is "number one (i.e., consumers choose its products more than those of any other manufacturer) in the specific product or market segment of wood-alternative decking" (Opp'n to Mot. Dismiss), but the statements themselves do not say that consumers choose TimberTech (or AZEK) more or that the metric being assessed is sales volume.  Instead, AZEK has advertised that it is "#1 in Premium Decking" and that "TimberTech is the #1 Provider in Design Preference."  Those statements do not indicate who believes AZEK is #1.  And although they contain the words "in design preference" or "in premium decking," they do not specify a particular category of measure.  That is, AZEK's statements do not say they are #1 in market share, or sales volume, or price, or customer satisfaction, or in giving the best warranty, or in any number of other categories.

When they testified, it was plain that Trex and its employees interpreted those #1 statements as referring to market share or sales volume, and the court understands their point of view.  Particularly since those employees work for a company that is the market leader and touts

13

that as an important feature of its products, it is not surprising that they interpret the #1 or leader statements in that fashion. But the challenged statements are far more ambiguous than that and are simply too vague to be anything but puffery.

Furthermore, as to the "design preference" claim, the court is not even sure what that means. But the court is certain that it is entirely too vague to be interpreted as a claim that TimberTech is #1 in sales volume. Thus, it is axiomatic puffery. *See Solum v. Certainteed Corp.*, 147 F. Supp. 3d 404, 412 (E.D.N.C. 2015) ("Puffery is an exaggerated statement which no reasonable buyer would be justified in relying on or a claim of superiority so vague that nothing can be understood from it except that it is an opinion.") (citation omitted).

Trex also points out that, in the same website page where "#1 in premium decking" appears, AZEK also advertises that it is "#1 in performance trim." In terms of sales volume or market share, AZEK apparently is the sales leader in performance trim. From this, Trex argues that the #1 used in the same context should be interpreted to mean the same thing. But the fact that AZEK happens to be the sales leader for performance trim does not mean that the statement "#1 in performance trim" is intended to convey that. That statement, just as with the other #1 statements challenged here, is simply too vague to be meaningful at all, and the court concludes that all of the #1 statements are puffery. Thus, they cannot support a violation of the Lanham Act. The motion to dismiss will be granted insofar as it relates to the #1 statements.

2. **The "leader" statements**

Similarly, the third category of statement, about AZEK being the "preferred premium leader in the categories where we offer products" is so ambiguous as to be puffery. First of all, there is ample authority holding that statements that a company is "the leader" are generally puffery. *See, e.g.*, *Earthcam, Inc. v. Oxblue Corp.*, No. 1:11-cv-02278, 2012 WL 12836518, at

*4–*7 (N.D. Ga. Mar. 26, 2012) (concluding that defendant's statement that it is "the leader in construction camera services and technology" was a "general statement of superiority over all other competitors" and thus non-actionable puffery); *Intertape Polymer Corp. v. Inspired Techs., Inc.*, 725 F. Supp. 2d 1319, 1334–35 (M.D. Fla. 2010) (concluding that "industry leader" statement was "classic puffery"). Much like the "#1 statements," the statement that someone is the "preferred premium leader" does not say *by whom*. Nor does it identify a measure in which the company leads (e.g., aesthetics, warranty offerings, variety of products offered, sales volume, etc.) So, again, the court concludes that this statement, too, is mere puffery. The motion to dismiss the complaint, insofar as it relates to this statement, is granted.

### 3. The "2-to-1" statements

In contrast to the other advertisements that the court has already discussed, the court concludes that the "2-to-1" advertisements are not puffery. First of all, there is more specificity in these advertising statements, because they give a ratio, which implies that there is some data to back up the claim. This renders them less vague and more empirical. This fact easily distinguishes these statements from the two cases cited by AZEK, which involved only general statements of superiority, using only subjective terms. (*Compare* Def.'s Mem. Supp. Mot. Dismiss 15–16 (citing *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05-cv-4088, 2005 WL 3557947, at *10 (N.D. Ill. Dec. 26, 2005) (holding that claims touting defendant's computer software product as "innovative" and as "leveling the playing field" were puffery), and *Paduano v. Am. Honda Motor Co.*, 88 Cal. Rptr. 3d 90, 129 (Cal. Ct. App. 2009) (concluding advertisement touting a hybrid car as getting "terrific" gas mileage relative to unspecified conventional cars was puffery).) Moreover, the ratio given in this case is not so high that a consumer could not reasonably rely on it. *Cf. In re General Motors Corp. Anti-Lock Brake*

15

*Prods. Liab. Litig.*, 966 F. Supp. 1525, 1531 (E.D. Mo. 1997) (concluding that a statement that something is 99 percent more effective, or that a result is 100 times more likely are the type of "comparative claims, often involving large numbers, [that] are puffing because a consumer cannot reasonably believe there is a test behind the claim").

As AZEK correctly notes (Def.'s Reply to Pl.'s Opp'n to Mot. Dismiss 16, Dkt. No. 45), the simple fact that numbers and a ratio are used does not mean the statement cannot be puffery. But in the context here, the court concludes that the overall statement is sufficiently specific that it is more akin to a statement of fact than opinion or puffery and something on which consumers might be expected to rely.

Additionally, the court is unconvinced by AZEK's argument that the use of the indefinite article "a" rather than "the" is determinative here. Specifically, AZEK contends that the statements do not claim that TimberTech is "the" preferred choice but "a" preferred choice and thus that the statements are so vague as to be puffery. (Def.'s Mem. Supp. Mot. Dismiss 16.) While the specific words used matter, the court cannot agree that the statements are so vague as to be puffery. These statements note that AZEK is preferred (whether by consumers or others who purchase alternative wood decking) and by a specific amount (2 to 1). The court cannot say that, as a matter of law, the statements are so vague as to be puffery.

Indeed, these statements are similar to a statement that the *Century 21* court determined was not puffery. Specifically, that court concluded that a statement suggesting that the competitor's real estate agents were outselling others "3 to 1" was not puffery. AZEK contends that the statement in *Century 21* was more specific than the statement here, because it specifically referenced sales, while the statement here simply says that TimberTech is "a preferred choice" by a ratio of 2 to 1 and thus does not specifically reference sales volume. The

16

court believes, though, that although sales is not mentioned in the metric here, the use of the word "preferred choice," especially when combined with the reasonable ratio given, states a sufficient factual statement that can be false, or at least misleading.

As to the 2-to-1 statements, therefore, the motion to dismiss will be denied because the statements can potentially give rise to liability under the Lanham Act. The motion to dismiss will be granted, however, as to the other advertising claims on which the complaint seeks to base liability because the court has determined that those other statements are all puffery.

**B. Motion for Preliminary Injunction**

Having found that one of the statement categories is not puffery and thus potentially actionable, the court turns next to Trex's motion for preliminary injunction and addresses it only as to the 2-to-1 statements.

**1. Legal standards**

As the Supreme Court explained in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Under the applicable standard articulated in *Winter*, the movant "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc) (quoting *Winter*, 555 U.S. at 20; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014) (discussing and applying *Winter* standard); and *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287 (4th Cir. 2011) (discussing and applying *Winter* standard). All four of these requirements must be met for a plaintiff to obtain preliminary injunctive relief. *Real Truth About*

*Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

"The traditional office of a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir.2003). A mandatory injunction, however, disturbs the status quo ante, which "in any circumstances is disfavored." *League of Women Voters of N.C.*, 769 F.3d at 235 (citation omitted).

### 2. Likelihood of success on the merits

The first *Winter* factor requires the court to determine Trex's likelihood of success on the merits as to the 2-to-1 statements. As noted above, to prove its false advertising claim under the Lanham Act, Trex will have to establish five elements:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about its own or another's product;
> (2) the misrepresentation is material, in that it is likely to influence the purchasing decision;
> (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience;
> (4) the defendant placed the false or misleading statement in interstate commerce; and
> (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Prods., LLC v. Mead Johnson & Co.*, 629 F.3d 111, 120 (4th Cir. 2011).

As the Fourth Circuit has explained and as it relates to several of the elements above, there are two possible avenues of establishing Lanham Act liability. Specifically,

> [f]or liability to arise under the false advertising provisions of the Lanham Act, "the contested statement or representation must be either false on its face or, although literally true, likely to mislead

> and to confuse consumers given the merchandising context." *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.,* 131 F.3d 430, 434 (4th Cir.1997). "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." *Cashmere & Camel Hair Mfrs.,* 284 F.3d at 311. But if "a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers." *Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir.1992); *see also Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 14 (7th Cir.1992) ("[A] court may find on its own that a statement is literally false, but, absent a literal falsehood, may find that a statement is impliedly misleading only if presented with evidence of actual consumer deception.").

*Id.*

This distinction is significant here because Trex has not produced any evidence of actual consumer deception. Accordingly, at least to show a likelihood of success on the merits at this stage, Trex must rely on literal falsity. To be literally false, though, a statement must be both "unambiguous" and "false." *Id.; see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 275–76 (4th Cir. 2002). Literally false statements also include the sub-category of statements that are literally "false by necessary implication," meaning that "considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Scotts Co.*, 315 F.3d at 274. Put differently, a claim of literal falsity by necessary implication is viable where the plaintiff's asserted conclusion "necessarily flowed from the ad's statements." *Design Resources, Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 503 (4th Cir. 2015).

The only non-puffery statements remaining as the basis for a potential claim are the 2-to-1 statements, such as "TimberTech Is a Preferred Choice 2-to-1 Over the Competition." AZEK argues that the statement is ambiguous, and the court is constrained to agree. In particular, even assuming that the statement refers to sales volume, we do not know who "the competition" is.

19

That term is ambiguous.  Here, Trex maintains that "the competition" necessarily means all of AZEK's competitors in the alternative wood decking industry, and thus that the statement is false.  Clearly, if the statement "the competition" refers just to Trex, the statement is false.  But if "the competition" refers to only some of the minor players in the market, then the statement is true.  That is, TimberTech's sales volume is, in fact, more than twice the amount of several a number of minor competitors in the alternative wood decking market.  While this is a strained reading of the statement, and perhaps even an unlikely interpretation, it is also technically true.  Although the court can certainly see a valid argument that the statement is misleading or confusing to consumers—and indeed, it may be that Trex will be able to show that the statement is misleading, the court cannot find, as a matter of law, that the statement is literally false.  In short, the ambiguity precludes a finding of literal falsity.

Because this statement is not literally false, and because no evidence has been presented that any consumer was actually misled, Trex has failed to make a "clear showing" that it would be likely to succeed on the merits.  Thus, it is unnecessary to reach the remaining elements of the Lanham Act claim or to further address the *Winter* requirements for granting injunctive relief.  The court will deny the motion for preliminary injunction.

### III.  CONCLUSION

For the foregoing reasons, the motion to dismiss will be granted in part and denied in part, and the motion for preliminary injunction will be denied.  An appropriate order will issue.

Entered: August 1, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge